**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    LAWRENCE RUDOLPH,
2.    **LORI MILLIRON,**

    Defendants.

---

### ORDER DENYING DEFENDANT MILLIRON'S MOTION TO DISMISS COUNT 3

---

As set forth in the Superseding Indictment, a grand jury has charged Defendant Lori Milliron with one count of being an accessory after the fact to homicide in violation of 18 U.S.C. § 3 ("Count 3"), one count of obstruction of a grand jury proceeding in violation of 18 U.S.C. § 1503 ("Count 4"), and five counts of perjury before a grand jury in violation of 18 U.S.C. § 1623(a).  (ECF No. 53.)  The charges arise from the alleged murder of Bianca Rudolph by Milliron's co-defendant, Lawrence Rudolph ("Rudolph"), and Milliron's testimony in front of a grand jury investigating the murder.  (*Id.*)  This matter is currently set for a 13-day jury trial beginning on July 11, 2022.  (ECF No. 105.)

Before the Court is Milliron's Motion to Dismiss Count 3 ("Motion"), filed on May 2, 2022.  (ECF No. 107.)  The Government responded to the Motion on May 18, 2022.  (ECF No. 121.)

After reviewing the parties' briefs, the Court has concluded that it does not need

an evidentiary hearing to decide the Motion.  For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

The Government alleges that on the morning of October 11, 2016, Rudolph murdered his wife, Bianca Rudolph, while outside of the United States and in the jurisdiction of the country of Zambia.  (ECF No. 53 at 1; *see also* ECF No. 1-2.)  On December 22, 2021, Rudolph was arrested on charges of mail fraud and foreign murder.  (*See* ECF No. 12.)  On January 4, 2022, Milliron attended Rudolph's detention hearing where, according to the Government, she heard a detailed account of the evidence and disputes between the parties.  (ECF No. 121 at 2.)  The Government alleges Milliron heard that, among other things, her relationship with Rudolph was being used as evidence of his motive for murdering his wife.  (*Id.* at 1.)

On January 5, 2022, Milliron testified before a grand jury, which was considering whether to indict Rudolph.  (ECF No. 53 at 3.)  The Government alleges that Milliron lied to the grand jury by testifying:

> (1)  that she didn't recall the source of her substantial cash income while working in Rudolph's dental practice—$20K in 2014 and $60K in 2015 (all cash from Rudolph),
>
> (2)  that she didn't know why Rudolph was so generous to her,
>
> (3)  that she was placed on Rudolph's credit card after his wife died as a job "perk,"
>
> (4)  that she did not give Rudolph an ultimatum to leave his wife before Bianca died, and
>
> (5)  that he had previously only proclaimed his innocence to her.

2

(ECF No. 121 at 3 (citing ECF No. 53).)  On the same day, despite her testimony, the grand jury returned an indictment charging Rudolph with foreign murder and mail fraud. (ECF No. 26.)  On February 9, 2022, the grand jury returned a Superseding Indictment against Rudolph which added Milliron as a Defendant and charged her with multiple counts, including Count 3: being an accessory after the fact in violation of 18 U.S.C. § 3. (ECF No. 53.)

18 U.S.C. § 3 provides that "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."  Count 3 of the Superseding Indictment reads:

> On or about January 5, 2022, in the State and District of Colorado, the defendant LORI MILLIRON, knowing that an offense against the United States had been committed, that is the foreign murder described in Count 1, did comfort and assist the offender, LAWRENCE RUDOLPH, in order to hinder his trial and punishment.
>
> All in violation of 18 United States Code, Section 3.

(ECF No. 53 at 2.)

On May 2, 2022, Milliron filed this Motion, requesting that Count 3 be dismissed pursuant to Federal Rule of Criminal Procedure 12(b) for failure to state an offense. (ECF No. 107.)

## II. LEGAL STANDARD

Rule 12(b) allows a party to raise "by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including the defense for "failure to state an offense."  Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).

"An indictment is sufficient if it sets forth the elements of the offense charged,

puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).  Nonetheless, the Tenth Circuit Court of Appeals has recognized that courts "may always ask 'whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence' and dismiss the indictment if its allegations fail that standard."  *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (citing *United States v. Todd,* 446 F.3d 1062, 1068 (10th Cir. 2006)).

### III. ANALYSIS

In her Motion, Milliron argues that the Court should dismiss Count 3 for failure to state an offense.  The Court will consider each of her arguments in turn.

First, Milliron argues that, as a matter of law, the Government cannot establish the third element of 18 U.S.C. § 3, which requires that a person must intend for his or her act to "hinder or prevent [the offender's] apprehension, trial, or punishment."  Milliron argues that she cannot have had the requisite intent because her grand jury testimony was "absolutely incapable of causing Rudolph's escape or release from custody."  (ECF No. 107 at 3.)  More specifically, she argues that "[n]othing she said or could have said in the grand jury on January 5, 2022 delayed or prevented Rudolph from standing trial because he was already in custody at the time."  (*Id.* at 7.)  Thus, based on the facts alleged, Milliron argues that the Government has failed to state an offense.

The Court disagrees.  As the Government points out, when Milliron testified to the grand jury, it had not yet decided whether to indict Rudolph for murder; he was only being held on a criminal complaint.  (ECF No. 121 at 5.)  Absent the indictment, the

4

complaint would have been dismissed and Rudolph would have been released. (*Id.*) Thus, Millirons testimony *was not* "absolutely incapable" of causing Rudolph's release from custody because her testimony might well have convinced the grand jury not to return an indictment, and as a consequence could have delayed or prevented Rudolph from standing trial and facing punishment.[1] Therefore, the Court finds that the Government's allegations, taken as true, are sufficient to establish the third element of 18 U.S.C. § 3.

Second, Milliron argues that "[b]eing an accessory after the fact is . . . a narrower concept than the modern idea of obstruction of justice," which "extends only to acts meant to help someone escape arrest and legal proceedings—not as the government would have it, to acts like perjury meant only to influence the outcome of the legal process." (ECF No. 107 at 8.) Milliron cites several non-binding cases to support her position that most lies told to authorities do not make one an accessory after the fact. (*See id.* at 6 (citing *Wren v. Virginia*, 67 Va. 952, 956–57 (1875); *Street v. Texas*, 45 S.W. 577, 578 (Tex. Crim. App. 1898); *Farmer v. Oklahoma*, 40 P.2d 693, 694 (1935)).)

The Court is not persuaded by Milliron's argument or the case law cited to support it. The Tenth Circuit Court of Appeals has not spoken to this issue directly; however, in *United States v. Day*, 533 F.2d 524 (10th Cir. 1976), the court found evidence sufficient to support an accessory-after-the-fact conviction where the defendant lied to authorities investigating a murder he had helped plan. *Id.* at 526.

---

[1] Milliron also argues that her grand jury testimony could not "prevent [Rudolph] from serving a sentence because he has not been convicted of anything, much less sentenced." (ECF No. 121 at 7.) The Court is not convinced by this argument as well, because by hindering Rudolph's trial, Milliron would also potentially be hindering his punishment.

Beyond that, more persuasive case law from other circuits supports the proposition that allegations of lying can be legally sufficient to state an offense under 18 U.S.C. § 3. *See United States v. White*, 771 F.3d 225, 234 (4th Cir. 2014) (affirming denial of motion for judgment of acquittal on accessory-after-the-fact charge where there was evidence that defendant falsely told an insurance claims investigator that he thought a tenant had intentionally started fire in duplex he owned as part of scheme to help coconspirator cover up arson); *United States v. Rux*, 412 F.2d 331, 333 (9th Cir. 1969) (finding sufficient evidence to support accessory-after-the-fact conviction where, among other things, defendant gave the FBI false information suggesting that his brother did not rob bank). The Court agrees with and adopts the reasoning of these cases and finds that the Government's allegation that Milliron lied to the grand jury in order to hinder the punishment of Rudolph is sufficient to state an offense under 18 U.S.C. § 3.[2]

---

[2] To be clear, the Court *does not* hold that lying or misleading the authorities to protect someone from criminal liability is always sufficient support a conviction under 18 U.S.C. § 3. In *United States v. Lepanto*, 817 F.2d 1463, 1468 (10th Cir. 1987), the Tenth Circuit expressed concerns with such a broad interpretation of § 3. In *Lepanto*, the defendant was interviewed by the police concerning the whereabouts of his brother, who had made 3 bombs in violation of federal law. *Id.* at 1467. The court, reviewing the evidence put on at trial, found there was "ample evidence" that the defendant knew his brother had committed a federal offense. *Id.* at 1468. And the court found that "defendant's statements regarding his brother's whereabouts were *clearly intended to mislead the police*." *Id.* at 1468 (emphasis added). But the court noted that the police had not told the defendant why they were asking about his brother. *Id.* The court expressed serious concerns about whether these circumstances alone would be sufficient to support a conviction under § 3, reasoning that "[w]hile such cooperation may be desirable, we are not convinced that Congress intended to mandate it on pain of imprisonment in every instance." *Id.* In coming to this conclusion, the court cited the Fifth Circuit:

> the restricted application with the traditional rigid standards of proof of statutes forbidding false swearing or perjury cannot be so easily circumvented by imposing a criminal penalty for the making of every false unsworn statement, as such, to a federal officer on some kind of theory of less [sic] majesty not congenial to the temper and spirit of our people or the nature and genius of our institutions.

*Id.* at 1468 (citing *Miller v. United States,* 230 F.2d 486, 489 (5th Cir. 1956)). Here, unlike the

Third, Milliron argues that the accessory-after-the-fact offense is intended to reach conduct that would be innocent but for the fact that it was undertaken to keep a criminal from facing the judicial process.  (ECF No. 107 at 7–8.)  Milliron argues her alleged conduct—obstruction of justice and perjury in front of a grand jury—is not innocent, so her alleged conduct cannot make her an accessory after the fact.  (*Id.*)  In support of her position, Milliron cites several cases in which accessory-after-the-fact convictions arose from conduct that would otherwise be innocent, such as bailing a person out of jail or driving a person around town.  (*Id.*)

However, the import of these cases is very limited here, as they are support only for the proposition that an accessory-after-the-fact charge *can* be based on otherwise innocent conduct, not that it can *only* be based on innocent conduct.  Clearly, these decisions do not support the contention that criminal conduct undertaken to keep an offender from facing the judicial process is outside of the scope of an accessory-after-the-fact charge.  Indeed, the Government responds, convincingly, by pointing to a Fourth Circuit case upholding a conviction for obstruction *and* for being an accessory after the fact.  (ECF No. 121 (citing *United States v. De La Rosa*, 171 F.3d 215, 218–19, 221 (5th Cir. 1999)).)  The Court sees no reasonable justification for limiting the scope of an accessory-after-the-fact charge to otherwise innocent conduct, and therefore, it finds Milliron's third argument is also unavailing.

In conclusion, the Court finds that the Superseding Indictment sufficiently sets

---

defendant in *Lepanto*, Milliron was informed of the nature of the charges against Rudolph when she allegedly lied to the grand jury.  In the Court's view, the facts in *Lepanto* are materially distinguishable from those present here, and as a consequence the concerns of the *Lepanto* panel are not directly implicated in the context of the instant Motion.

7

forth all of the elements of 18 U.S.C. § 3, puts Milliron on fair notice of the charges against which she must defend, and enables her to assert a double jeopardy defense. *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). It may well be true that the Government will be unable to prove beyond a reasonable doubt at trial that Milliron intentionally lied to the grand jury, or that she lied with the intent to hinder Rudolph's trial and punishment. However, such a determination is solely for the jury to make, and for this Court to usurp this role of the trier of fact through the mechanism of a motion to dismiss would be wholly improper. *See United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion.").

## CONCLUSION

For the foregoing reasons, the Court ORDERS that Milliron's Motion to Dismiss Count 3 (ECF No. 107) is DENIED.

Dated this 27th day of May, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge