IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    LAWRENCE RUDOLPH,
**2.    LORI MILLIRON,**

    Defendants.

## ORDER DENYING DEFENDANT MILLIRON'S MOTION TO DISMISS COUNTS 4–9

As set forth in the Superseding Indictment, a grand jury has charged Defendant Lori Milliron with one count of being an accessory after the fact to homicide in violation of 18 U.S.C. § 3, one count of obstruction of a grand jury proceeding in violation of 18 U.S.C. § 1503 ("Count 4"), and five counts of perjury before a grand jury in violation of 18 U.S.C. § 1623(a) ("Counts 5–9"). (ECF No. 53.) The charges arise from the alleged murder of Bianca Rudolph by Milliron's co-defendant, Lawrence Rudolph ("Rudolph"), and Milliron's testimony in front of a grand jury investigating the murder. (*Id.*) This matter is currently set for a 13-day jury trial beginning on July 11, 2022. (ECF No. 105.)

Before the Court is Milliron's Motion to Dismiss Counts 4–9 ("Motion"), filed on May 13, 2022. (ECF No. 111.) The Government responded to the Motion on June 3, 2022. (ECF No. 141.)

After reviewing the parties' briefs, the Court has concluded that it does not need an evidentiary hearing to decide the Motion. For the reasons set forth below, the Motion

is denied.

## I. BACKGROUND

The Government alleges that on the morning of October 11, 2016, Rudolph murdered his wife, Bianca Rudolph, while outside of the United States and in the jurisdiction of the country of Zambia. (ECF No. 53 at 1; *see also* ECF No. 1-2.) On December 22, 2021, Rudolph was arrested on charges of mail fraud and foreign murder. (*See* ECF No. 12.) On January 4, 2022, Milliron attended Rudolph's detention hearing where, according to the Government, she heard a detailed account of the evidence and disputes between the parties. (ECF No. 121 at 2.) The Government alleges Milliron heard, among other things, that her relationship with Rudolph was being used as evidence of his motive for murdering his wife. (*Id.* at 1.)

On January 5, 2022, Milliron testified before a grand jury, which was considering whether to indict Rudolph. (ECF No. 53 at 3.) The Government alleges that Milliron lied to the grand jury by testifying:

> (1) that she didn't recall the source of her substantial cash income while working in Rudolph's dental practice—$20K in 2014 and $60K in 2015 (all cash from Rudolph),
>
> (2) that she didn't know why Rudolph was so generous to her,
>
> (3) that she was placed on Rudolph's credit card after his wife died as a job "perk,"
>
> (4) that she did not give Rudolph an ultimatum to leave his wife before Bianca died, and
>
> (5) that he had previously only proclaimed his innocence to her.

(ECF No. 141 at 2 (citing ECF No. 53).) On the same day, despite her testimony, the

2

grand jury returned an indictment charging Rudolph with foreign murder and mail fraud. (ECF No. 26.)  On February 9, 2022, the grand jury returned a Superseding Indictment against Rudolph which added Milliron as a Defendant and charged her with multiple counts, including Count 4 for obstruction of justice in violation of 18 U.S.C. § 1503 and Counts 5–9 for perjury in violation of 18 U.S.C. § 1503(a).  (ECF No. 53.)

On May 13, 2022 Milliron filed this Motion, seeking dismissal of Counts 4–9. (ECF No. 111 at 1.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) allows a party to raise "by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including the defense for "failure to state an offense."  Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).  Nonetheless, the Tenth Circuit Court of Appeals has recognized that courts "may always ask 'whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence' and dismiss the indictment if its allegations fail that standard." *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (quoting *United States v. Todd,* 446 F.3d 1062, 1068 (10th Cir. 2006)).

"Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial

motion." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). When testing an indictment's sufficiency before trial, an indictment's allegations are taken as true, and a court should not consider evidence outside of the indictment. *Id.* The Tenth Circuit has, however, carved out an exception to that general rule for cases "where the underlying facts [are] essentially undisputed and the government fail[s] to object to the district court's resort to evidence beyond the four corners of the indictment." *Id.* "Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt." *Id.* at 1088 (emphasis in original).

### III. ANALYSIS

Counts 5–9 each allege that Milliron committed perjury in violation of 18 U.S.C. § 1623(a), which has four elements: "(1) the defendant made a declaration under oath before a grand jury; (2) such declaration was false; (3) the defendant knew the declaration was false, and (4) the false declaration was material to the grand jury's inquiry." *United States v. Leifson*, 568 F.3d 1215, 1220 (10th Cir. 2009) (citing *United States v. Clifton*, 406 F.3d 1173, 1177 (10th Cir. 2005)).

Milliron argues that Counts 5–9 should be dismissed because: (1) the charges are based on ambiguous questions; and (2) the responses to those questions were literally true or based on an inability to remember. (ECF No. 111 at 6.) Additionally, she argues that Counts 4–9 should be dismissed based on the perjury trap doctrine. (*Id.* 13.)

### A. Ambiguity and Literal Truth: Counts 5–9

The Tenth Circuit has repeatedly held that "[a]n answer is not a knowing false statement if the witness responds to an ambiguous question with what he or she

4

believes to be a truthful answer. *United States v. Strohm*, 671 F.3d 1173, 1178 (10th Cir. 2011) (citing *United States v. Hilliard*, 31 F.3d 1509, 1519 (10th Cir. 1994)). However, "in most instances, the meaning of a prosecutor's question and the truthfulness of a defendant's answer are best left to a jury." *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998); *see also Strohm*, 671 F.3d 1173 at 1179 ("[F]undamental ambiguity is the exception, not the rule.").

"A question is fundamentally ambiguous in narrow circumstances. To qualify, the question must lack 'a meaning about which men of ordinary intellect could agree.'" *Strohm*, 671 F.3d at 1179 (quoting *Farmer*, 137 F.3d at 1269). The rule of fundamental ambiguity serves to:

> (1) preclude convictions grounded on surmise or conjecture;
>
> (2) prevent witnesses from unfairly bearing the risks of inadequate examination; and
>
> (3) encourage witnesses to testify (or at least not discourage them from doing so).

*Farmer*, 137 F.3d at 1269.

The literal truth defense originates in the Supreme Court's decision in *Bronston v. United States*, 409 U.S. 352 (1973). "Worried about the chilling effect of a perjury prosecution based simply on the implication of a non-responsive, but literally true answer, the Court concluded '[a] jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner.'" *Strohm*, 671 F.3d at 1184 (quoting *Bronston*, 409 U.S. at 359). Critically for this Motion, the literal truth defense is inapplicable to answers that are not "undisputably true." *Id.* at 1185.

5

1. Count 5

First, Milliron challenges Count 5, which is based on the following allegedly false testimony:

> Q: At the time you were working at Three Rivers, did you have any other substantial source of cash income?
>
> A: I don't recall.
>
> Q: Do you recall making—well, how frequently do you think you deposited cash into your personal account?
>
> A: I don't know. I couldn't say.
>
> . . . .
>
> Q: Take a look at Exhibit 2. This is an analysis of cash deposits into your PNC Bank account. Do you recall depositing approximately $20,000 in cash into that account in 2014?
>
> A: No, I don't.
>
> Q: $60,000 in 2015?
>
> A: No, I don't.

(ECF No. 53 at 3–4.) Milliron argues that her answer to the first question cannot support a perjury charge because the word "substantial" is ambiguous. (ECF No. 111 at 7.)

In this context, the Court is not persuaded that the phrase "substantial source of cash income" is ambiguous. The Government alleges that Milliron made multiple cash deposits ranging from $20,000 to $60,000 while she was working at Rudolph's company. In this context, any person of ordinary intellect could agree that such large sums would fall within the meaning of the word "substantial." Therefore, this argument cannot serve as a basis for dismissing Count 5.

Milliron also argues that her answers to all these questions were true; she argues

that she did not remember the cash deposits because her memory had faded over time. (*Id.* at 7.) However, as discussed above, the literal truth defense is inapplicable to answers that are not "undisputably true." *Strohm*, 671 F.3d at 1185. The question of whether Milliron does in fact remember these transactions is very much in dispute, and the Court finds that her credibility is an issue for the jury.[1]

For the reasons discussed, this portion of the Motion is denied.

2.   Count 6

Count 6 is based on the following allegedly false testimony:

> Q: Why was Larry paying you this additional money if you already had a salary for those things?
>
> A: Because he wanted to help me.
>
> Q: Did he explain why?
>
> A: He was very generous.
>
> . . . .
>
> Q: So in 2015 you received approximately double your salary—or your salary again but all in cash?
>
> A: Yes.
>
> Q: And in 2016 you received a little bit more than your salary in cash?
>
> A: Yes.
>
> Q: Why was Larry so generous to you?
>
> A: I don't know why. But like I said, he would give other— staff members, he would buy them washers and dryers. He would give them cash if they needed it, a whole variety of things.

---

[1] Milliron also argues that the Government has shown no evidence that she remembered the transactions. (ECF No. 111 at 7.) The Court disagrees. A reasonable jury could find that she *did* remember the transactions based on the transactions sizes alone.

7

> Q: So your testimony before the members of the Grand Jury today is that you don't know exactly why he gave you $60,000 in 2015?
>
> A: I don't know exactly why.

(ECF No. 53 at 4–5.)

Milliron argues that she was improperly asked to speculate as to Rudolph's state of mind. (ECF No. 111 at 8.) She argues that perjury convictions should not be grounded on a defendant's "surmise or conjecture." (*Id.* at 9 (quoting *Farmer*, 137 F.3d at 1269).) The Government responds that questions about state of mind are not necessarily ambiguous and points out that juries frequently make determinations about a person's state of mind. (ECF No. 41 at 8.)

The Court finds no reason to rule that questions about another person's state of mind are *per se* ambiguous, and Milliron has not cited any case law to the contrary. While it may be difficult to persuade a jury that Milliron knew exactly why Rudolph was generous toward her, that is not a legally sufficient reason to dismiss the charge. *See Hall*, 20 F.3d at 1087 ("the sufficiency of the government's evidence to support a charge[] may not be challenged by a pretrial motion").[2] Thus, the Court is not persuaded that dismissal is appropriate based on this argument.

Next, Milliron argues that the word "generous" is vague and ambiguous, so her answer to the question "Why was [Rudolph] so generous to you?" cannot serve as the basis of a perjury offense. (ECF No. 111 at 9.) In this context, the word "generous" was

---

[2] Milliron also argues that she answered "simply and honestly" that she did not know why Rudolph was so generous. (ECF No. 111 at 9.) Again, the literal truth defense is not available unless a defendant's answer is indisputably true. *Strohm*, 671 F.3d at 1185. The Government alleges that Rudolph and Milliron had an intimate relationship, and the question of whether she knew why he was so generous to her is very much in dispute. Therefore, the Court rejects Milliron's argument.

8

not ambiguous as a matter of law because just previously the Government had confirmed with her that she had received large cash payments in addition to her salary in 2015 and 2016. (ECF No. 53 at 4.) Any person of ordinary intellect would agree that, in this context, "generous" referred to Rudolph's alleged the cash payments to Milliron. Therefore, this argument cannot serve as a basis for dismissing Count 6.

Finally, Milliron argues that her statement, "I don't know," cannot serve as basis for a perjury charge. (ECF No. 111 at 9.) But she does not cite any case law to support the proposition that swearing under oath that one does not know something cannot serve as a basis for a perjury charge. In fact, the Tenth Circuit has upheld perjury convictions based on an "I don't know" response. *See Strohm*, 671 F.3d at 1185. The Court finds that jury could be persuaded by the evidence at trial that, despite her contention to the contrary, Milliron did in fact know why Rudolph was so generous to her. Thus, the Court rejects this argument, as well.

For the reasons discussed, this portion of the Motion is denied.

3. Count 7

Count 7 is based on the following allegedly false testimony:

> Q: Ms. Milliron, if you'll notice there was $75,000 in 2016 with $33,500 in 2017. Do you see that?
>
> A: Yes.
>
> Q: Why would he give you less in 2017?
>
> A: I don't know why.
>
> . . . .
>
> Q: He gave you approximately $75,450 in 2016 and in 2017 he gave you $33,350. I believe your testimony earliest was that you weren't sure why he gave you less in 2017. Do you now remember why he might have given you less in 2017?

9

>   A: No. I don't know why.
>
>   Q: Was it because at that point you were on his American Express card?
>
>   A: No. The card was basically part of my—it's a Three Rivers Dental card. It was part of my perks, I guess.

(ECF No. 53 at 5.)

Milliron argues that her last answer cannot serve as basis for a charge of perjury because she stated that she was guessing. (ECF No. 111 at 11.) But she ignores that the first part of her answer, before her "guess," was a definitive denial that Rudolph gave her less money in 2017 than in 2016 because she was on his American Express card in 2017. (ECF No. 53 at 5.) Therefore, the Government has sufficiently alleged perjury based on Milliron's denial, and therefore, the Court need not consider whether a guess can serve as the basis for a perjury charge.

Therefore, this portion of the Motion is denied.

4. <u>Count 8</u>

Count 8 is based in part on Milliron's denial that she ever gave Rudolph an ultimatum that he needed to leave his wife and her denial that she ever told anyone that she was thinking of leaving Rudolph. (ECF No. 53 at 6.) Milliron argues that these denials were based on her inability to recall, so they cannot support a perjury charge. (ECF No. 111 at 12.) For the same reasons discussed above regarding Count 5, the Court rejects this argument.

Thus, this portion of the Motion is denied.

5. <u>Count 9</u>

Count 9 is based in part on Milliron's statement that Rudolph told her he was irritated that the FBI was investigating him because he felt he was innocent. (ECF No.

53 at 7.) Milliron argues that her statement is true, and thus cannot support a charge for perjury. (ECF No. 111 at 13.) As discussed above, literal truth is only a defense when a defendant's response is indisputably true. Here, the Government alleges that Rudolph did not tell her that he was innocent. Thus, for the same reasons discussed above regarding Count 5, the Court rejects this argument.

Therefore, this portion of the Motion is denied.

**B.    Perjury Trap Doctrine: Counts 4–9**

Under the perjury trap doctrine, dismissal of an indictment is required where the prosecutor's purpose in questioning a witness before a grand jury is to extract perjury from that defendant. *United States v. Howard*, 867 F.2d 548, 550 (9th Cir. 1989)

The Tenth Circuit has not recognized the perjury trap doctrine. Moreover, the two Ninth Circuit opinions relied on by Milliron explicitly state that the Ninth Circuit has also not recognized the perjury trap doctrine. *See United States v. Chen*, 933 F.2d 793, 797 (9th Cir. 1991); *Howard*, 867 F.2d at 550.

However, even if the perjury doctrine were recognized in this circuit, the Court would not apply it in this case. Several other circuits have concluded that the existence of a "legitimate basis" for an investigation and for particular questions answered falsely precludes "any application of the 'perjury trap' doctrine." *United States v. Regan*, 103 F.3d 1072, 1079 (2d Cir. 1997); *see also United States v. Brown*, 49 F.3d 1162, 1168 (6th Cir. 1995) ("When testimony is elicited before a grand jury that is 'attempting to obtain useful information in furtherance of its investigation' or 'conducting a legitimate investigation into crimes which had in fact taken place within its jurisdiction', the perjury trap doctrine is, by definition, inapplicable." (internal citations omitted)).

After a careful review of the circumstances here, the Court finds that the

Government had a legitimate basis for asking Milliron questions regarding aspects of her relationship with Rudolph, as these questions go directly to Rudolph's alleged intent in killing Bianca Rudolph. Thus, assuming without deciding that the perjury trap doctrine in legally viable in this circuit, the Court holds that said doctrine does not apply in this case.

Finally, Milliron argues that she did not receive *Miranda* warnings prior to testifying and was not informed that she was a target or a "putative defendant." (ECF No. 111 at 14–15.) However, she was not subject to a custodial interrogation at the time, and she merely speculates that the Government viewed her as a target at the time she was called to testify.[3] Milliron's argument is without merit, and the Court finds that the provision of *Miranda* warnings to her were not necessary in these circumstances.

Therefore, for the reasons discussed, this portion of the Motion is also denied.

## CONCLUSION

For the foregoing reasons, the Court ORDERS that Milliron's Motion to Dismiss Counts 4–9 (ECF No. 111) is DENIED.

Dated this 10th day of June, 2022.

BY THE COURT:

William J. Martinez
United States District Judge

---

[3] The Government explains that Milliron only became a target "after she had given incredible answers to the grand jury." (ECF No. 141 at 10.) According to the Government, evidence came to light after she testified on January 5 that Rudolph had told Milliron "I killed my fucking wife for you." (*Id.*) And that evidence, along with her testimony and "the larger evidentiary mosaic" shifted her status from a witness to a target. (*Id.*)