IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **LAWRENCE RUDOLPH** and
2. **LORI MILLIRON,**

Defendants.

---

**VERIFIED PETITION FOR ADJUDICATION OF INTERESTS IN PROPERTY ORDERED FORFEITED**

---

Petitioners Julian and AnaBianca Rudolph (hereinafter collectively "Petitioners"), by and through their undersigned counsel, petition this Court for an ancillary hearing pursuant to 21 U.S.C. § 853(n)(2), incorporating 18 U.S.C. § 982, and assert their interest as innocent third parties with respect to the property which has been forfeited to the United States, in the above-styled case, as follows:

1. Julian Rudolph ("Julian") is the son of Defendant Lawrence Rudolph ("Dr. Rudolph") and decedent Bianca Rudolph ("Mrs. Rudolph").

2. AnaBianca Rudolph ("AnaBianca") is the daughter of Dr. Rudolph and Mrs. Rudolph.

3. Petitioners hereby assert their legal interests in the following property ordered forfeited to the United States in this Court's Preliminary Order of Forfeiture:

   a. 58.74% of the value of the real property located at 7000 N 39th Place, Paradise Valley, Arizona 85253;

    b. 50.55% of the value of the real property located at 103 Morningside Drive, Cranberry Township, Pennsylvania 16066;

    c. Approximately $3,496,092.04 seized from Bank of New York Mellon account #10532701000, located at 500 Ross Street, Pittsburgh, Pennsylvania 15262, in the name of the Lawrence P. Rudolph Trust;

    d. Approximately $527,736.24 seized from Vanguard account #058588150069515, located at 100 Vanguard Blvd., Malvern, Pennsylvania 19355 in the name of the Lawrence P. Rudolph and Bianca T. Rudolph TR-Rudolph Trust;

    e. Approximately $751,776.28 seized from Vanguard account #054088150069515, located at 100 Vanguard Blvd., Malvern, Pennsylvania 19355 in the name of the Lawrence P. Rudolph and Bianca T. Rudolph TR-Rudolph Trust;

    f. A 2018 Ashton Martin DB-11, VIN # SCFRMFAV5JGL03309 seized on December 21, 2021 from Lawrence Rudolph located at 7175 E. Camelback Road, Scottsdale, Arizona 85251; and

    g. A 2017 Bentley Bentayga, VIN # SJAAC2ZV2HC014709 seized on December 21, 2021 from Lawrence Rudolph located at 7175 E. Camelback Road, Scottsdale, Arizona 85251.

4. On or about October 11, 2016, Mrs. Rudolph died from a single shotgun round to the chest while on a hunting trip with Dr. Rudolph in Zambia.

5. Prior to her death, Mrs. Rudolph obtained the following nine life insurance policies from seven different insurance carriers:

| Insurance Company | Policy Number | Amount ($) | Approx. Claim Date | Primary Beneficiary | Contingent Beneficiary |
|---|---|---|---|---|---|
| AAA Life Insurance Company | GT8107 Cert.4019648262 | 200,000.00 | 11/7/2016 | The Rudolph Trust | Lawrence Rudolph[1] |
| Ameritas | U00013758A | 751,849.32 | 11/14/2016 | Lawrence Rudolph | AnaBianca and Julian Rudolph |
| Ameritas | T00017578A | 1,003,049.90 | 11/14/2016 | Lawrence Rudolph | AnaBianca and Julian Rudolph |
| Fidelity Life Association | 0100382288 | 100,973.41 | 10/31/2016 | The Rudolph Trust[2] | AnaBianca and Julian Rudolph[3] |
| Genworth Life and Annuity Insurance Company | 1308458 | 844,533.88 | 11/7/2016 | The Rudolph Trust | Lawrence Rudolph |
| Great West Life Insurance Company | 104 TLP Cert. 105665 | 1,000,157.54 | 11/7/2016 | The Rudolph Trust | Lawrence Rudolph |
| Metlife Insurance Company | 215 150 755 UT | 772,901.17 | 11/7/2016 | Lawrence Rudolph | AnaBianca and Julian Rudolph |

---

[1] A document executed on July 27, 2016, changed the contingent beneficiary on this policy to Dr. Rudolph.

[2] A document dated May 31, 2016, was sent to Fidelity requesting that the primary beneficiary be changed to the Rudolph Trust. A document dated August 1, 2016, was sent by Fidelity to the insured indicating the beneficiary change could not be processed without Mrs. Rudolph's signature. A renewed change of beneficiary request was sent to Fidelity on September 1, 2016. Though Petitioners do not have an approval form from Fidelity documenting the change in beneficiary status, the claim on the policy was eventually paid to the Rudolph Trust in 2017.

[3] A document dated June 18, 2012, changed the contingent beneficiaries on this policy to AnaBianca and Julian.

| Insurance Company | Policy Number | Amount ($) | Approx. Claim Date | Primary Beneficiary | Contingent Beneficiary |
|---|---|---|---|---|---|
| Transamerica Life Insurance Company | 42728878 | 503,438.85 | 11/7/2016 | The Rudolph Trust | Lawrence Rudolph[4] |
| Transamerica Life Insurance Company | 42186233 | 500,840.86 | 11/7/2016 | The Rudolph Trust | Lawrence Rudolph[5] |

6.  True and correct copies of the nine insurance policies, including their beneficiary designations, are attached hereto as **Exhibit A**.

7.  Although Mrs. Rudolph largely designated Dr. Rudolph, or a family trust (the "Rudolph Trust") controlled by Dr. Rudolph,[6] as the primary beneficiary on these insurance policies, she ensured her children were also specifically designated as the contingent beneficiaries on multiple policies, such that they became entitled to receive the proceeds on them should Dr. Rudolph predecease her or otherwise be disqualified (like what happened here).

8.  Additionally, the Rudolph Trust, which is the primary beneficiary on six of the nine policies, provides for distribution of the trust property to Julian and AnaBianca in the event that Dr. Rudolph is deceased or otherwise prohibited from acting as a beneficiary. *See* The Rudolph Trust, Section 12.01, at 12-1, attached hereto as **Exhibit C**.

---

[4] A document executed on July 29, 2016, changed the contingent beneficiary on this policy from AnaBianca and Julian to Dr. Rudolph.

[5] A document executed on July 29, 2016, changed the contingent beneficiary on this policy from AnaBianca and Julian to Dr. Rudolph.

[6] As of December 19, 2022, Dr. Rudolph resigned as trustee of the Rudolph Trust. *See* Resignation of Trustee, attached hereto as **Exhibit B**.

9. Almost immediately after Mrs. Rudolph's death, between October 31, 2016, and November 14, 2016, Dr. Rudolph began submitting claims for payment in relation to these nine policies. In so doing, he failed to disclose his role in the circumstances of her death.

10. Based on Dr. Rudolph's representations that Mrs. Rudolph's death was an accident, the insurance companies paid Dr. Rudolph, or the Rudolph Trust that Dr. Rudolph controlled, the proceeds of the various policies between January and March of 2017.

11. In total, Dr. Rudolph and/or the Rudolph Trust he controlled received approximately $4,877,744.93 from the seven life insurance companies.

12. Nearly five years after murdering his wife and fraudulently submitting claims for the proceeds of her life insurance policies, Dr. Rudolph was arrested by federal law enforcement.

13. On January 5, 2022, a federal grand jury returned an indictment against Dr. Rudolph charging him with one count of first degree overseas murder, in violation of 18 U.S.C. §§ 1111 and 1119, and one count of mail (insurance) fraud, in violation of 18 U.S.C. § 1341.

14. A jury convicted Dr. Rudolph of both counts on August 1, 2022.

15. After the conclusion of the trial, the government moved for an order that Dr. Rudolph: (1) forfeit property identified as proceeds of his insurance fraud offense; and (2) pay mandatory restitution to the victims of his crimes.

16. Although the government specifically stated in an earlier court filing that Julian and AnaBianca are "the victims of the crime," *see* 22 CR 12, Dkt. #256, at 9, in its November 15, 2022 Motion for Mandatory Restitution and Forfeiture, the government took the position that the only victims entitled to restitution are those insurance companies that paid out on claims previously submitted by Dr. Rudolph in 2017. 22 CR 12, Dkt. # 296, at 8.

17. The life insurance policies at issue in this matter are straightforward, industry standard contracts that require the insurance companies to pay out the proceeds of the policies under any circumstances other than suicide. The policies also contain simple choice of law provisions that point to specific states, namely Arizona, Illinois, and Pennsylvania. Each of those states has nearly-identical Slayer Statutes that expressly prohibit Dr. Rudolph from benefitting from his wife's life insurance policies and, more importantly, provide for Petitioners to step in to benefit in his place.

18. As such, the fraudulent misrepresentations that Dr. Rudolph made to the insurance companies did not change the fact that those companies were contractually obligated to pay out the proceeds on the policies in Mrs. Rudolph's name. Instead, those misrepresentations simply changed to whom the funds were sent. But for Dr. Rudolph's conduct, Petitioners would have received the funds from the life insurance companies in the first instance.

19. Moreover, a number of the insurance companies have themselves recognized that Dr. Rudolph's actions did not alter their financial and contractual obligations to pay out to a lawful beneficiary the proceeds of Mrs. Rudolph's insurance policies.

20. Petitioners' counsel has contacted the seven insurance companies identified herein. The five insurance companies that have responded to counsel's inquiries have engaged in either oral or written discussions with counsel regarding their entitlement to receive restitution in this matter. These companies have confirmed that they were contractually required to make the payments under any circumstances other than suicide and implied that, as a result, they not entitled to restitution because of their contractual obligation to pay these claims regardless of Dr. Rudolph's conduct. *See*, *e.g.*, *Letter from Genworth Life and Annuity Insurance Company*, attached hereto as **Exhibit D**.

21. Further, materiality witnesses called by the government as representatives of the insurance companies at trial each stated that disclosure concerning the circumstances of Mrs. Rudolph's death would have been valuable not for purposes of whether they were contractually required to pay claims (which they were), but instead because the proceeds should have been paid to other lawful beneficiaries – namely, Julian and AnaBianca. *See*, *e.g.*, *U.S. v. Rudolph, et al.*, 22 CR 12, Trial Transcript, Day 6, Testimony of Greg Mirabelli, pg. 55-56, attached hereto as **Exhibit E**.

22. The foregoing statements by the life insurance companies align with well-settled tenets of law. Per applicable state laws, longstanding caselaw from courts across the United States, and the clear provisions of the life insurance policies, the life insurance companies discharged all their obligations under the policies at the moment that they paid Dr. Rudolph the proceeds. This includes the obligation to pay Julian and AnaBianca as contingent beneficiaries and, as a result, extinguishes any contractual liability the life insurance companies had to Julian and AnaBianca.

23. There are no other claimants to the life insurance proceeds.

24. For these reasons, Julian and AnaBianca's interests in the insurance proceeds have been held in a constructive trust since the moment of Mrs. Rudolph's murder, and thus the insurance proceeds and any assets deriving therefrom are not properly subject to forfeiture.

25. Alternatively, should this Court find Petitioners are not the proper beneficiaries of the constructive trust, the insurance companies are the proper beneficiaries of the constructive trust.

26. On May 17, 2023, this Court entered the Preliminary Order of Forfeiture ordering the forfeiture of the above-referenced assets identified as proceeds of Dr. Rudolph's insurance fraud offense.

27. Pursuant to 21 U.S.C. § 853(n)(6), Petitioners have the legal right, title, or interest in the property described herein, and such right, title, or interest renders the Preliminary Order of Forfeiture invalid in whole or in part because the right, title, or interest was vested in Petitioners, rather than Dr. Rudolph, or Petitioners' right, title, or interest was superior to any right, title, or interest of Dr. Rudolph at the time of the commission of the acts which gave rise to the forfeiture of the property.

WHEREFORE, for the reasons set forth herein as well as presented in the accompanying Memorandum of Law, Petitioners seek relief from this Court's Preliminary Order of Forfeiture and hereby request, pursuant to 21 U.S.C. § 853(n)(5), that this Court hold a hearing ancillary to the criminal conviction of Dr. Rudolph, at which Petitioners may testify and present evidence and witnesses on their own behalf, and further that this Court fully recognize in the Final Order of Forfeiture the interest of Petitioners as set forth herein and order that the forfeited money, property, accounts, and vehicles, as well as the appreciation and/or proceeds from the sale of these assets, be disbursed to Petitioners.

Dated: June 16, 2023

PETITIONERS' COUNSEL

/s/ *Christopher P. Hotaling*
Christopher P. Hotaling (IL Bar #6272432)
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:   312.977.4418
Fax:   833.968.0535

/s/ *John R. Sandweg*
John R. Sandweg (DC Bar #1027208)
NIXON PEABODY LLP
799 9th Street NW, Suite 500

Washington, DC 20001-5327  
Tel:    202.585.8189  
Fax:   877.743.5914

*Attorneys for Petitioners*
*Julian and AnaBianca*
*Rudolph*

## **VERIFICATION OF PETITION**

I, Julian Rudolph, am the son of Defendant Lawrence Rudolph and decedent Bianca Rudolph, the trustee of the Rudolph Trust, and the executor of the Estate of Bianca Rudolph. I am authorized to execute this Verification of my and the Estate's Petition for Adjudication of Interests in Property Ordered Forfeited. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Petition is true and correct.

Date: June 16, 2023                                             _____

## VERIFICATION OF PETITION

I, AnaBianca Rudolph, am the daughter of Defendant Lawrence Rudolph and decedent Bianca Rudolph. I am authorized to execute this Verification of my Petition for Adjudication of Interests in Property Ordered Forfeited. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Petition is true and correct.

Date: 6/16/2023

4893-9680-8810.1

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forgoing was filed electronically on June 16, 2023, and thereby delivered by electronic means to all registered participants.

/s/ *John R. Sandweg*
John R. Sandweg (DC Bar #1027208)
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel: 202.585.8189
Fax: 877.743.5914