IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLORADO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 CRIMINAL CASE NO. 1:22-CR-0012-WJM-1

1. LAWRENCE RUDOLPH, and
2. LORI MILLIRON,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION
OF BANK OF NEW YORK MELLON FOR ANCILLARY HEARING
TO DETERMINE THIRD-PARTY INTEREST
IN PROPERTY SUBJECT TO FORFEITURE**

## INTRODUCTION

BNY Mellon (or "Petitioner") issued a deed of trust and construction loan to defendant Lawrence P. Rudolph on June 24, 2020 to build a residence at 7000 N. 39th Place, Paradise Valley, Arizona 85253 (the "Property"). A year and a half later, the Government filed a criminal complaint against Rudolph, charging him with murdering his wife while on a hunting trip in Zambia. Now, after Rudolph has been convicted of that crime and others, the Government seeks to forfeit the Property.

In accordance with 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c), Petitioner requests a hearing to determine and adjudicate the validity of its legal right, title, and interest in the Property. Petitioner is a bona fide purchaser for value of the right, title, and interest in the Property, and was reasonably without cause to believe that the Property was subject to forfeiture at the time Petitioner entered into the deed of trust with Rudolph. Therefore, Petitioner requests that the Court grant its request for a hearing and find that BNY Mellon has established its superior legal right, title, and interest in the Property, as well as its reasonable attorneys' fees and costs incurred in protecting such right, title, and interest, by a preponderance of the evidence. 21 U.S.C. § 853(n)(6)(B).

## ARGUMENT

I. **Petitioner is a bona fide purchaser for value of the right, title, or interest in the Property and was reasonably without cause to believe that the Property was subject to forfeiture.**

Rudolph purchased the Property on August 14, 2017, for $3,550,000.00, and it was titled in his name. On June 24, 2020, Petitioner secured its interest in the Property by a first lien in connection with a deed of trust and $2,500,000.00 construction loan. The deed of trust was recorded July 6, 2020, and secures to BNY Mellon the repayment of the loan and Rudolph's performance of the covenants and agreements under the deed of trust and the promissory note.

2

The deed of trust provides that Rudolph "irrevocably grants and conveys" to BNY Mellon "in trust, with power of sale," the Property. (Petition Exhibit ("Ex.") 1 at 2.) The deed of trust further provides that Rudolph "is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record." (*Id.*)

Petitioner's counsel has been in regular contact with the United States throughout the litigation of this matter. The government has represented to undersigned counsel that it recognizes Bank of New York Mellon's interest and position in this forfeiture matter. Likewise, in the Rudolph children's petition for an ancillary proceeding, they, too, appear to recognize the superiority of BNY Mellon's claim. (*See* Doc. No. 368 at 15 n.6 ("[Children] are not asserting priority over any other individuals or entities who may have an interest in the forfeited property deriving from the mail fraud offense. Aside from a bank which has a secured interest through a mortgage note on one of the pieces of real estate at issue, Petitioners *are* the only ones with such an interest." (emphasis in original)).

Even if BNY Mellon's position were contested, BNY Mellon can show that it is a bona fide purchaser for value, and intends to at the ancillary proceeding. In forfeiture proceedings, "ownership interests . . . are defined by state law," which, here, is Arizona. *United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008). Thus, if BNY Mellon's "right, title, or interest in the property" were contested, the court would look to Arizona law. 21 U.S.C. § 853(n)(6)(B). "Conceptually, this aspect of the case is akin to a quiet title action to determine the respective ownership interests" of BNY Mellon and any other interested person. *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1015 (8th Cir. 2003). Arizona law places a strong emphasis on lien priority. *See, e.g.*, *Weitz Co. L.L.C. v. Heth*, 235 Ariz. 405, 412 (2014). To the

best of BNY Mellon's knowledge, and based upon a search of the Maricopa County Recorder's Office's website, the Property is not subject to any other liens. Moreover, the DOJ Asset Forfeiture Policy Manual 2023 provides that "[p]riority in the distribution of forfeited assets is given to valid owners, lienholders, federal financial regulatory agencies, and victims (in that order) . . . ." (2023 Manual at 166.)

Finally, Petitioner meets the requirement of 21 U.S.C. § 853(n)(6)(B) that it was "reasonably without cause to believe that the property was subject to forfeiture" at the time it entered into the deed of trust because it entered into the deed of trust almost one and a half years before the government filed its criminal complaint. Petitioner therefore could not have known, and was reasonably without cause to believe, that Rudolph would be charged, much less convicted and the Property forfeited.

Therefore, BNY Mellon will be able to demonstrate at the ancillary proceeding that it is a bona fide purchaser for value. *See United States v. Huntington Nat'l Bank*, 682 F.3d 429, 434 (6th Cir. 2012) (holding that a secured creditor of a deposit account was a bona fide purchaser under 21 U.S.C. § 853(n)(6)(B) because "one who takes a security interest in property in exchange for an antecedent debt . . . can be a BFP [bona fide purchaser] of that property interest"); *see also Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 246 (2d Cir. 2011) (referring to mortgage holder as a "bona fide purchaser for value of the homes" that were subject to forfeiture). BNY Mellon is entitled to $2,499,904.97, representing the unpaid balance on the loan plus interest and late fees. (Ex. 2.)

**II.   Petitioner is entitled to its attorneys' fees and costs under the statute because the Property is subject to the deed of trust.**

In addition, Petitioner is entitled to its reasonable attorneys' fees and costs, as secured in the deed of trust. It is well-established that lenders are entitled to any fees, costs, and interest

4

provided for in the loan agreement. For example, in *United States v. Harris*, 246 F.3d 566, 567 (6th Cir. 2001), a case involving criminal forfeiture under 18 U.S.C. § 982 following the defendant's convictions for Medicare fraud and money laundering, the government seized certain real estate for which the claimants (innocent third-party lenders) held mortgages. *Id.* at 568. The claimants asserted that—as required by their mortgage contracts—they were entitled to prepayment penalties. The Sixth Circuit agreed, explaining that because the parties had explicitly agreed that claimants were entitled to recover prepayment premiums, and the claim was enforceable under state law, claimants were entitled to the premiums under 21 U.S.C. § 853(n)(6)(B). *Id.* at 571.

The Sixth Circuit explained its logic, which applies equally here: "by virtue of the relation-back doctrine, once the property is forfeited, the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more." *Id.* at 575-76. Therefore, "it logically follows that in the case at hand, the government assumed no greater rights than that of Defendant, and because Defendant would have been bound to pay prepayment premiums to Claimants on the outstanding defaulted loan obligations, the government must also be bound to do so. To hold otherwise would give the government greater rights than Defendant . . . ." *Id.* at 576.

The Tenth Circuit follows the position taken by the *Harris* court and holds that petitioners' interest in forfeited property is governed by the secured instrument. In *United States v. Real Property Located at 2471 Venus Drive, Los Angeles, Cal.*, 949 F.2d 374 (10th Cir. 1991), which arose under a different forfeiture statute, the court looked to the language of the deed of trust, which provided that the petitioner had the right to recover attorneys' fees (a right that was secured by the property). "Therefore, their right to recover such fees is an interest in the

5

property." *Id.* at 376. The Tenth Circuit noted that its "conclusion is in accord with the only circuit court cases to have considered the issue" and remanded to the district court to determine the precise rights to attorneys' fees in the relevant deeds of trust. *Id.* at 377 & n.2 (citing *In re Metmor Fin., Inc.*, 819 F.2d 446 (4th Cir. 1987)).

In this case, Rudolph would have been bound to pay Petitioner's attorneys' fees, costs, and interest, had he retained title to the Property. BNY Mellon's right to reimbursement of attorneys' fees arose at the time the deed of trust was formed. Under Arizona law, when parties enter into contracts "voluntarily, courts will enforce the contract's provisions." *Bridges v. Nationstar Mortgage L.L.C.*, 253 Ariz. 532, 534 (2022) (citing *1800 Ocatillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202 (2008)). With respect to deeds of trust, Arizona courts "interpret a deed of trust consistent with its plain language." *Id.* (citing *Schaeffer v. Chapman*, 176 Ariz. 326, 328 (1993). Even interpreting the deed of trust in favor of protecting borrowers, *see id.*, there is no way to recast or interpret Section 9 of the deed of trust that would extinguish BNY Mellon's right to attorneys' fees and costs. Because the government has now stepped into Rudolph's shoes, the government assumes the rights of Rudolph—but no more. Thus, the government's forfeiture interest in the Property is bound by the terms of the deed of trust and subject to the provisions of Section 9. (*See* Ex. 1 at 5.)

Courts outside the Tenth Circuit follow the same rule as the Sixth Circuit in *Harris* and the Tenth Circuit in *Real Property Located at 2471 Venus Drive*. For example, in *United States v. Federal National Mortgage Association*, 946 F.2d 264, 267 (4th Cir. 1991), the court recognized that innocent lienholders would have the right to recover outstanding principal, pre- and post-seizure interest, and attorneys' fees and costs if provided for by contract. In *United States v. Six Parcels of Real Property Situated in Blount County, Tennessee*, 920 F.2d 798, 799

(11th Cir. 1991), the court agreed that an innocent lienholder was entitled to its attorneys' fees and costs provided for in the loan documents, and noted that to hold otherwise would be a deprivation of its rights in the forfeited property. And in *United States v. Real Property Located at 41741 National Trails Way, Daggett, California*, 989 F.2d 1089, 1090-91 (9th Cir. 1993), the court agreed that the innocent lienholder was entitled to its attorneys' fees and costs incurred after seizure, because such fees and costs were provided for in its note and deed of trust. *See also United States v. 1980 Lear Jet, Model 35A, Serial Number 277*, 38 F.3d 398, 402 (9th Cir. 1994) (in forfeiture action under both 18 U.S.C. § 981 and 18 U.S.C. § 881, petitioner's "lienable interest in the [forfeited] jet" included statutory interest under state law in addition to principal amount).

To be sure, the principle goes both ways; thus in *Metmor Financial*, 819 F.2d 446, the innocent lien-holder requested its attorneys' fees and costs expended in recovering property that had been forfeited to the government. The court rejected the lien-holder's claim, but only because such expenses were <u>*not*</u> provided for in the mortgage agreement. *Id.* at 448 n.3. Here, of course, they are. (*See* Ex. 1 at 5.)

Therefore, and in addition to the unpaid balance and interest on its loan, BNY Mellon is entitled to reasonable attorneys' fees and costs incurred in protecting its legal right, title, and interest in the Property. As Petitioner will show at the hearing, protecting its legal right, title, and interest in the Property has included, among other things, 1) actively monitoring construction of the Property (through the construction loan/draw down process) to ensure that the Property was completed; 2) conferring with the government regarding its intent to seize (and subsequent seizure of) Rudolph's BNY Mellon accounts and the Property in or about 2021 and 2022; 3) conducting legal research relating to these seizures to protect Petitioner's and

7

borrower's interest in the Property;[1] 4) conferring with the government regarding a proposed expedited settlement; 5) monitoring the proceedings in the civil forfeiture and criminal cases, including monitoring the litigation by the Rudolph children; 6) conducting research regarding forfeiture processes and procedures and disposition of real property, to ensure Petitioner's interest would be secured; 7) monitoring the insured status of the Property; 8) counseling Petitioner on obtaining—at Petitioner's own cost—forced-placed insurance on the Property once Rudolph stopped making insurance payments on the Property; and 9) filing this Petition and Motion in support thereof. At the conclusion of the ancillary hearing, and based upon the information and evidence presented, Petitioner will seek approximately $85,000 in attorney fees and costs, which, Petitioner respectfully submits, is reasonable in light of the work necessary to protect and preserve its interest.

## CONCLUSION

For the foregoing reasons, Petitioner BNY Mellon respectfully requests that this Court grant its petition and hold an ancillary hearing pursuant to 21 U.S.C. § 853(n)(5), at which Petitioner may testify and present witnesses and evidence in support of its petition. Petitioner further requests that this Court enter a Final Order of Forfeiture recognizing Petitioner's right and interest as detailed above and providing that proceeds from the sale of the forfeited property be disbursed to Petitioner in an amount representing the total of Petitioner's unpaid principal, interest, and recording

//
//
//

---

[1] At the relevant times, Rudolph had been charged but not convicted, and Petitioner had a duty to ensure that its actions vis-à-vis the accounts and Property were lawful and appropriate.

fees, plus attorneys' fees as outlined above, and the cost of forced-placed insurance, and any other amounts incurred in protecting Petitioner's legal right, title, and interest in the Property.

Date: July 17, 2023  Respectfully submitted,

  */s/ Eddie A. Jauregui*
Eddie A. Jauregui
Eddie.Jauregui@hklaw.com
**HOLLAND & KNIGHT LLP**
400 South Hope Street 8th Floor
Los Angeles, CA 900711
Telephone: (213) 896-2455
Facsimile: (213) 896-2450

*Counsel for Petitioner*

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **July 17, 2023**, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will serve it via transmission of Notice of Electronic Filing generated by CM/ECF or via other transmissions, on all counsel of record.


    */s/ Eddie A. Jauregui*
Eddie A. Jauregui